IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ANNIE WASHBURN EGGLESTON,

        Plaintiff,

v.        Civil Action Number 3:05CV721

WAL-MART STORES EAST, LP,

        Defendant.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Wal-Mart Stores East, LP's ("Wal-Mart") Motion in Limine to Preclude Testimony of Plaintiff's Expert Albert Vangura Pursuant to Federal Rule of Evidence 702 and on Defendant's Motion for Summary Judgment. For the reasons to follow, Defendant's Motion to Preclude Testimony of Plaintiff's Expert is hereby GRANTED. Defendant's Motion for Summary Judgment is hereby GRANTED.

**I. Background**

The facts of the case may be summarized as follows:

On December 9, 2003 Annie Eggleston ("Eggleston") was shopping in a Wal-Mart store in South Hill, Virginia. While she was waiting on line at the customer service counter, Eggleston was struck by a Wal-Mart motorized shopping cart driven by another customer, Annie Wynn ("Wynn"). At the time of the accident, Wynn had been diagnosed with Alzheimer's disease. After Wynn came into contact with Eggleston from behind, the cart continued to move forward. The impact of the cart knocked Eggleston to the floor. She suffered a broken right hip as a result of the accident.

## II. Defendant's Motion to Preclude Testimony
## of Plaintiff's Expert Albert Vangura

Plaintiff has designated Albert Vangura Jr., M.S. ("Vangura") as an expert in this case. Vangura has rendered several opinions regarding the incident, including opinions that are relevant to Defendant's Motion for Summary Judgment. Specifically, Vangura opines that Wal-Mart failed to provide a safe environment for its business invitees by not providing adequate supervision, or taking proactive measures to screen or test its customers before allowing them to use motorized carts. Vangura also opines that Wynn was incapable of operating the motorized cart safely at the time of the incident due to her Alzheimer's disease and possibly her poor eyesight.

Generally, Fed. R. Evid. 702 provides the standard for admission of expert testimony. The Rule states an expert's opinion must be based on facts established by independent evidence properly introduced, and that expert testimony must be both reliable and helpful to the jury as a predicate for admissibility. In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court mandated district courts take an active role as gatekeepers for expert testimony admission.

Wal-Mart rejects Vangura's methods and claims his testimony would be neither reliable nor helpful to the jury, but would confuse the jury.

**A.     Vangura's Training and Background**

Vangura received a B.S. in Exercise and Sports Science: Biomechanics from Pennsylvania State University in 1992. He received a Master of Science Degree in Bioengineering from Pennsylvania State University in 2000. As part of his research, Vangura prepared and executed biomechanical and sports equipment studies on a wide variety of different sports and human

movements. Vangura has done research and design work related to manual and motorized wheelchairs and has conducted a test study of the wheelchairs in a public environment for compliance with federal, state, and local laws. He currently serves as a recreational consultant who assists with identifying and eliminating safety issues related to playground design and installation.

**B.     Vangura's Investigation and Methods**

Wal-Mart claims Vangura's education, training, and work history do not qualify him to render opinions regarding Wal-Mart's breach of the standard of care owed to its customers. Vangura has never done any consulting work for a retail establishment like Wal-Mart, has never taken any course work regarding the retail industry, and has no experience with motorized carts in the retail environment. Accordingly, Wal-Mart claims Vangura ignores the standards of the retail industry, and attempts to hold Wal-Mart to a higher standard.

Vangura has offered an opinion regarding Wal-Mart's duty as a retail establishment to take proactive measures. Vangura's site visits to other retail establishments confirm that Wal-Mart did not violate the standard of care for the industry. In determining what standard of care should be applied, Plaintiff suggests that in the absence of any regulatory or industry standards concerning the incident carts it is reasonable to seek out regulatory standards as Vangura has done. Wal-Mart claims that none of the other stores Vangura visited performed the "testing protocols" or used the same standard of care suggested by Vangura. See Redman v. John D. Brush & Co., 111 F.3d 1174, 1179 (4th Cir. 1997) (holding that in the absence of an industry standard, it would be speculative and misleading for the expert to opine that product did not meet the undefined standard).

3

Absent industry norms, practices, or regulations, Vangura's unsupported testimony about warnings and instructions on the standard of care Wal-Mart should apply is not acceptable.

**C.  Vangura's Proposed Testimony**

Vangura opines that Wynn was incapable of operating the motorized cart safely due to her Alzheimer's disease and possibly her poor eyesight. This testimony is outside the scope of Vangura's training or experience to render these opinions. Moreover, Vangura admits that he did not consult a medical professional to confirm his theory that Wynn's eyesight was poor at the time of the accident.

Plaintiff argues that Vangura's proposed testimony fits with the facts of the case, since he reviewed Wynn's medical records. Vangura's review and interpretation of Plaintiff's medical records do not establish him as an expert on her condition at the time of the accident, or of her medical condition generally. See Talley v. Danek Medical, Inc., 7 F. Supp. 2d 725, 732 (E.D. Va. 1998) (holding that the expert's opinion was insufficient where statements amount to subjective opinions).

Much of Vangura's testimony amounts to speculation on subjects outside of his field and would be neither reliable, nor helpful to the jury. Accordingly, Defendant's Motion in Limine to Preclude Testimony of Expert Albert Vangura Pursuant to Fed. R. Evid. 702 is hereby GRANTED.

### III. Defendant's Motion for Summary Judgment

Having resolved the question of Defendant's Motion to Preclude Testimony of Plaintiff's Expert, the Court now turns to Defendant's Motion for Summary Judgment.

**A.     Standard of Review**

A motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Magill v. Gulf & W. Indus., Inc., 736 F.2d 976, 979 (4th Cir. 1984) (quoting Fed. R. Civ. P. 56(c)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). "Where . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." United States v. Lee, 943 F.2d 366, 369 (4th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

After the movant has met its burden of showing that no genuine issue of material fact exists, the non-moving party may not rest on its pleadings, but must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial. Celotex, 477 U.S. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in 56(c), except the mere pleadings themselves." Id. A mere scintilla of evidence in support of the plaintiff's claim is not sufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). There must be enough facts to support a verdict for him. Id. at 252–54.

In most cases, issues of negligence are not susceptible to summary judgment. However, where a plaintiff fails to state specific facts and produce concrete evidence to support her claim, a defendant may be entitled to that relief. Vaughn v. Huff, 186 Va. 144, 154, 41 S.E.2d 482, 487 (Va. 1947).

**B.     Discussion**

As this is a diversity action, the scope of premises liability is governed by Virginia law. A store owner must exercise a reasonable degree of care to make his premises safe for invitees. A plaintiff asserting a negligence claim must introduce "evidence which constitutes proof that the defendant breached some duty which it owed to the plaintiff, and caused by such breach [the] injury." Colonial Stores Inc. v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962) (citing Murphy v. Saunders, Inc., 202 Va. 913, 917, 121 S.E.2d 375, 378 (1961)). In Virginia, a store owner has a duty "to exercise ordinary care toward [customers] when they enter the premises. The owner must maintain its premises in a reasonably safe condition, and must warn a customer of any unsafe condition that is unknown to the customer but that is, or should be, known to the owner." See Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990).

Negligent breach of a duty is actionable only when it constitutes a proximate cause of the injury. S & C Co. v. Horne, 218 Va. 124, 128, 235 S.E.2d 456, 459 (1977). An injury is proximately caused by defendant's negligence if the injury is the natural and probable consequence of the negligence. Wyatt v. Chesapeake & Potomac Tel. Co., 158 Va. 470, 476, 163 S.E. 370, 372 (1932). The Virginia Supreme Court has recently defined the requirement of proof of proximate causation as a "but for" test. See Sugarland Run Homeowners Ass'n v. Halfmann, 260 Va. 366, 374, 535 S.E.2d 469, 474 (2000) (holding that the plaintiffs failed to carry their burden that "but for" the defendant's alleged negligence, the accident would not have occurred). Accordingly, Plaintiff must show more than mere possibility that an alleged flaw, act, or omission caused an injury. Proximate cause is a question of fact unless the facts alleged are susceptible to only one inference. Poliquin v. Daniels, 254 Va. 51, 57, 486 S.E.2d 530, 534 (1997).

### 1.     Failure to Monitor or Supervise Wynn's Use of the Cart

Plaintiff alleges that Wal-Mart's negligence caused Wynn to crash into Eggleston. She asserts that Wynn's use of the cart while suffering from Alzheimer's disease constituted an unsafe condition and Wal-Mart enabled Wynn, an unskilled operator to use the cart. Plaintiff claims that evidence of Wynn's inability to operate the car is that she drove her cart into a stationary customer. She further alleges that had Wal-Mart put certain measures in place, the accident could have been avoided. Specifically, she asserts Wal-Mart should have had a greeter personally instruct Wynn on the proper use of the cart. She claims that a conversation with Wynn would have disclosed her incapability to operate the cart.

Even if Wal-Mart conducted screening of each cart driver, there is no evidence that testing would have identified Wynn's alleged unfitness. There is no evidence other than Plaintiff's speculation on how Wynn's Alzheimer's disease affected her ability to conduct the vehicle, and how the accident actually occurred. A plaintiff must prove that the unfitness had a causal connection to the accident. See Laughlin v. Rose, 200 Va. 127, 132–33, 104 S.E.2d 782, 786–87 (1958) (holding plaintiff did not prove that the alleged unfitness due to lack of a license was a cause of the accident). Simply because the accident occurred, Plaintiff cannot prove that Wynn was an unfit driver. There is no evidence that shows Wal-Mart knew "or had reasonable cause to know" that it was entrusting the motorized cart to "an unfit driver likely to cause injury to others." Sandow-Pajewski v. Busch Entm't Corp., 55 F. Supp. 2d 422, 429 (E.D. Va. 1999) (citing Denby v. Davis, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972)).

Wal-Mart offers testimony from Wynn's treating physician and her companion that her Alzheimer's disease was in the very early stages and did not affect her ability to drive a motorized

cart. The stage of Wynn's Alzheimer's disease on the day of the accident is of little import however. There are several possible occurrences that could have caused the accident, rather than Wynn being an unfit driver due to her Alzheimer's disease. Wal-Mart offers the possibility that Wynn's attention was momentarily diverted, or that she was in fact a capable driver but failed to maintain a proper look out at the time. Plaintiff engages in backward reasoning from the accident, asserting that because there was an accident in which she was injured, Wynn must have been incompetent to operate the cart. This syllogistic reasoning by Plaintiff does not meet the standard of the but for test, since it does not eliminate the possibility of other causes of the accident.

Both parties seek to draw support from <u>Sandow-Pajewski</u>, a negligent entrustment case, in which an unknown electric wheelchair driver struck the plaintiffs on an exit ramp. In <u>Sandow-Pajewski</u>, plaintiffs' negligent entrustment claim failed for several reasons. First, plaintiffs could not identify with certainty whether the electric wheelchair in question was rented from either defendant. 55 F. Supp. 2d at 429. Second, since the operator of the electric wheelchair in question was unknown, plaintiffs could not establish whether defendants should have known of any condition which the unknown wheelchair patron had which made her incapable of properly operating the wheelchair. <u>Id.</u> at 429–30. A critical fact distinguishing the instant case from <u>Sandow-Pajewski</u>, is that had the cart been rented from one of the defendants, there was testimony that an employee would go over a checklist of instructions before a guest was able to rent the wheelchair. <u>Id.</u> at 430–31. In the instant case, the facts are disputed as to whether there were any visible instructions on the electric shopping cart. Finally, the court in <u>Sandow-Pajewski</u> did not analyze the issue of proximate causation, whereas here, the absence of proof of proximate causation is the downfall of Plaintiff's case.

### 2.     Condition of the Cart

Plaintiff asserts the cart lacked inexpensive and sensible safety features, such as a key system, or a foot brake.  Plaintiff claims that had Wal-Mart had a key system to operate the cart, someone would have spoken with Wynn and realized that she was incapable of operating it.  Further, Plaintiff states that had Wal-Mart purchased a cart with a foot brake, Wynn would have had another option which could have prevented the accident.  The facts are disputed as to whether there was an instructional sign on the motorized cart, but Plaintiff claims a visible instructional sign may have also prevented the accident.

Even if an instructional sign was missing from the motorized cart however, Plaintiff does not prove that the lack of a sign, or other safety feature such as a foot brake, or a key system was the but for cause of the accident.  She simply offers speculation that interaction with Wynn, or the existence of a foot brake would have prevented the accident.  This speculation does not meet the requirement of proof of proximate causation, that but for the defendant's alleged negligence, the accident would not have occurred.  See Sugarland Run Homeowners Ass'n. v. Halfmann, 260 Va. 366, 373, 535 S.E.2d 469, 473 (2000) (holding that evidence did not establish that alleged "flaws" were an omission which, in natural and continuous sequence produced the accident, and without which the accident would not have occurred).  Had the instructional sign and foot brake been in place, it is possible that neither Plaintiff, nor any other able bodied driver would have been able to avoid the accident.

## IV. Conclusion

Plaintiff does not make a prima facie case for negligence, that but for Defendant's negligence, the accident would have been avoided. Accordingly, Wal-Mart's Motion for Summary Judgment is hereby GRANTED. An Appropriate Order shall issue.


                                                            /s/ JAMES R. SPENCER
                                             CHIEF UNITED STATES DISTRICT JUDGE


ENTERED this   20   day of April 2006.